IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 18, 2012 Session

**IN RE SHYANN B.**

**Appeal from the Circuit Court for Greene County**
**No. 06A027    Kindall T. Lawson, Judge**

**No. E2011-01740-COA-R3-JV - Filed June 29, 2012**

This is an adoption case involving Shyann B. ("the Child") (DOB: April 11, 2005). We are asked to decide a jurisdictional question. At an earlier time, a juvenile court adjudicated the Child dependent and neglected. She was placed in the custody of the Department of Children's Services ("DCS") and placed by it in the foster care of Teresa S. ("Foster Mother"). Louis F. B. ("Uncle"), the Child's maternal great uncle, had also sought custody, but his petition was ultimately denied. After the parental rights of the Child's biological parents were terminated,[1] Foster Mother filed a petition to adopt in the trial court. Uncle responded with a counterclaim seeking to intervene and adopt, or, in the alternative, to obtain custody of the Child. At trial, Foster Mother took a voluntary nonsuit of her adoption petition and, on the same day, refiled a petition for adoption in the Chancery Court for Greene County. In the trial court, Uncle contended that the trial court retained jurisdiction to adjudicate his counterclaim for custody. The trial court found that, by virtue of Foster Mother's filing in chancery court, jurisdiction over the Child was then in chancery court. Accordingly, the trial court entered a judgment reciting "this cause is hereby dismissed." Uncle appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Brent Hensley, Greeneville, Tennessee, for the appellant, Louis F.B.

---

[1]The termination orders are not in the record. However, the record indicates that the natural mother's rights were terminated before the adoption petition was filed, while the natural father's rights were terminated a short time later.

Douglas R. Beier, Morristown, Tennessee, for the appellee, Teresa S.

Robert E. Cooper, Jr., Attorney General and Reporter, and Lindsey O. Appiah, Assistant Attorney General, Office of the Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I.

We now recite such of the underlying facts and procedural history as are necessary to establish the context in which the jurisdictional issue arises.

Jurisdiction over the Child was first exercised by the juvenile court in the dependency and neglect proceeding. Uncle, a New York resident, intervened and sought custody. Initially, DCS did not support Uncle's request, and it was denied. The juvenile court adjudicated the Child dependent and neglected and awarded legal custody and partial guardianship to DCS. At that time, the natural mother's rights had been terminated but the father's had not yet been terminated. The Child entered foster care and DCS, on April 12, 2005, placed her with Foster Mother. Uncle appealed the adverse-to-him custody ruling to the trial court. In the meantime, Uncle continued to visit the Child. As a consequence of these visits, DCS's earlier concerns about Uncle were alleviated. Citing Uncle's "cooperation with [DCS] and his relationship with the [C]hild," DCS entered into an August 4, 2006 agreed order that supported Uncle's efforts to gain custody. In the order, Uncle voluntarily dismissed his appeal of the juvenile court's disposition of the Child, and DCS agreed to "vest full custody and guardianship with [Uncle] once Father's rights were terminated." The order awarded Uncle partial guardianship and he took immediate physical custody of the Child.

The record indicates that Foster Mother filed a slew of motions[2] challenging the trial court's authority to award custody to Uncle, seeking a remand to juvenile court and otherwise opposing the agreed order. The pleadings indicate that, on September 5, 2006, Foster Mother obtained an ex parte order staying the August 4, 2006, order and directing that physical custody be returned to her. On September 7, 2006, Uncle sought immediate relief allowing him to retain physical custody of the Child, but no order disposing of his request appears in the record; Uncle returned the Child to Foster Mother's custody on September 13, 2006, where the Child remained at the time of the trial in this matter.

_____

[2]The motions are not in the record before us.

On September 6, 2006, when Uncle still had physical custody of the Child, Foster Mother filed a petition in the trial court to adopt the Child. In response, Uncle filed a "Petition to Intervene and for Adoption or in the alternative to be Granted Custody." Numerous filings by Foster Mother, Uncle, and DCS followed, and the case lingered. By January 2007, DCS's position had again changed, and it no longer held the view that adoption by Uncle was in the Child's best interest. For her part, Foster Mother moved (1) to dismiss Uncle's intervening adoption petition; (2) to terminate his visitation privileges; and (3) for a directed verdict or summary judgment on her adoption petition. These motions were addressed at an April 12, 2010, hearing. In the resulting order, the trial court dismissed Uncle's intervening petition to adopt the Child. The ruling was based on the fact that Uncle – being a New York resident – failed to meet the residency requirement for filing an adoption petition in Tennessee. *See* Tenn. Code Ann. § 36-1-115(d), (f) (2010). However, the court declined to grant Foster Mother summary judgment. The order provides, in relevant part, as follows:

> [Foster Mother's] Motion to Dismiss Intervening Petition for Adoption of [Uncle] is granted to the extent that he does not have standing to file an adoption action and therefore, [Uncle's] Petition for Adoption is to be dismissed. The Court finds that he does have a right to intervene in the Petition for Adoption filed by [Foster Mother] *to object that it is in the best interests of the [C]hild*.
>
> The Court declines to grant Summary Judgment because of the rights of [Uncle] set out above.

(Emphasis added.) Trial was set for July 2010. The Child, age five, had then been in foster care in Foster Mother's physical custody for nearly four years. Except possibly for a brief period in the time frame of August - September 2006, the Child at all times remained in the legal custody and full guardianship of DCS pursuant to the order of the juvenile court.

On the first day of trial, the court heard proof regarding Uncle's opposition to Foster Mother's adoption in the context of the best interest of the Child.[3] On July 20, 2010, as the second day of trial began, Foster Mother presented a "Notice and Order of Voluntary NonSuit." A few minutes later, Foster Mother's counsel exited the courtroom and went to chancery court where he filed Foster Mother's petition to adopt the Child.

---

[3]No transcript of the first day of trial is before us.

In the trial court, the discussion turned to whether, under these circumstances, the trial court continued to have jurisdiction of any aspect of this case. Generally, Foster Mother contended that the trial court lost all jurisdiction over the Child once her petition was nonsuited and refiled in chancery court; while Uncle argued that jurisdiction over his intervening adoption and custody petition survived in the trial court. DCS argued that with the nonsuiting of Foster Mother's adoption petition, the issue of custody essentially became an action by Uncle against DCS since DCS retained guardianship and custody of the Child. As the trial court put it, "that leaves us with the question[] as to what this Court has the power to do now." The Court observed:

> The primary question of course that remains for this Court is whether the Court has jurisdiction as we stand at this point.
>
> It's really a concern for this Court . . . always in cases involving children we need to hear them and make a determination and place the child is some permanent home as soon as possible. This one has gone on far too long. All that really concerns this Court and apparently is going to go on . . .
>
> I think the case got off track when DCS, for reasons that I don't understand changed their position back and forth. And then the custody of the [C]hild was switched back and forth and then we got into other procedures, and Ex parte proceedings, and pleadings of all sorts. . . .
>
> [N]ow we've had a partial Hearing on the Ex parte Motion as I recall, didn't finish that. We ran out of time . . . . Then quite a long delay. We get here and in the middle of the Proceeding the Petitioner in the Adoption decides to voluntarily dismiss [her] Adoption and it appears for good reason [– ] that there was a problem with it, a legal problem apparently.[4]
>
> \* \* \*
>
> And [DCS] has raised . . . some other issue that I think the Court would have to address. . . . whether or not even if the Court

---

[4]Earlier in the proceedings, Uncle disputed that Foster Mother had standing to file for adoption in light of the fact that he, not she, had physical custody of the Child on the date her petition was filed. This is apparently what prompted Foster Mother to nonsuit her action in the trial court and refile in chancery.

decides it has jurisdiction for the Custody Petition, one is it a change of custody or a custody. And two, can the Court legally grant that petition if the Court exercises jurisdiction. . . .

* * *

If the Court has no jurisdiction then end of story. . . . Except . . . custody would go back to DCS and guardianship and they would proceed from there. . . .

If the Court has jurisdiction we're still going to have to address the questions of whether or not the Court could grant the Petition of Custody as a matter of law.

The trial court ordered the parties to submit briefs on the issue of the court's jurisdiction, if any, to proceed with the case and Uncle's petition for custody in particular. When the case was before the trial court the following morning, the court announced that it needed more time to resolve the jurisdictional question. It set a deadline for further briefing. On October 5, 2010, pending the trial court's decision, Uncle went to chancery court and filed his "Petition to Intervene and for Adoption or in the alternative to be Granted Custody" there.

In ultimately dismissing Uncle's pending claim, the trial court stated:

[U]pon review of the pleadings, considerations of arguments of counsel and briefs filed by the parties[,]

[t]he Court finds that the Petition for Adoption in this Court has been voluntarily dismissed by [Foster Mother] and re-filed in the Chancery Court. Pursuant to T.C.A. [§] 36-1-118(e)(2) and (3)[5] jurisdiction over the [C]hild shall transfer to the Court where the new adoption petition may be filed.

**THEREFORE**, as to this court this cause is hereby dismissed.

(Capitalization and bold print in original.) Uncle timely filed a notice of appeal.

_____

[5]As will become apparent later in our opinion, we are convinced that the trial court inadvertently cited subsections (2) and (3), rather than (1) and (3), which are the provisions applicable under the facts of this case.

II.

Uncle presents the following issue for our review:

> Whether the trial court erred in finding that it did not retain jurisdiction after the voluntary nonsuit of the petition for adoption.

III.

The question before us is purely a question of law, and thus, our scope of review is de novo with no presumption of correctness attaching to the trial court's legal conclusions. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002); *Montgomery v. Mayor of Covington*, 778 S.W.2d 444, 445 (Tenn. Ct. App. 1988).

IV.

A.

Uncle asserts that "the filing of the Adoption Petition in the Greene County Chancery Court on July 20, 2010 should not be permitted as there would be an action pending with regard to the adoption and custody of the minor child in [the trial court]. . . ." He insists that the trial court allowed him to intervene to litigate the Child's best interest with respect to Foster Mother's prospective adoption "and [his] custody petition . . . was never dismissed, such that he remained a petitioner in intervention" even after Foster Mother's adoption petition was nonsuited. We disagree with this assertion. At the outset, there was no pending adoption action – only Uncle's alternative petition for custody –  once Foster Mother's adoption petition was nonsuited. Again, the trial court permitted Uncle to appear as an intervening petitioner *for the limited purpose of contesting Foster Mother's adoption*. When Foster Mother nonsuited her petition in the trial court, there was nothing left in the trial court to contest. Accordingly, as Uncle conceded at trial, "the only thing left standing" at that point was his custody petition.

B.

As we have indicated, there was much discussion at trial regarding the court's continuing jurisdiction, if any, following the voluntary nonsuit of Foster Mother's adoption petition. We  quote portions of the transcript:

[Counsel for Uncle]: [Foster Mother] has now dismissed [her] Petition for Adoption, but that doesn't dismiss my Intervening Petition.

[Counsel for Foster Mother]: The Court's previous Order . . . dismissed their Intervening Petition.

Trial Court: Not for custody.

\* \* \*

[Counsel for Foster Mother]: [O]nce the Adoption Petition is withdrawn the matter of custody goes back to the Juvenile Court or to the subsequent Adoption Court when one is filed.

Trial Court: Well that's the question, does it or not?

\* \* \*

I dismissed the[] Adoption Petition . . . [and] said what they can do is object and offer proof to show that it's not in the best interest of the [C]hild for the Adoption [by Foster Mother]. I don't think I addressed at all [Uncle's] Petition for Custody.

\* \* \*

[Counsel for Uncle]: Here's the ultimate situation, [Foster Mother] has nonsuited [her] aspect of the case, which is the Adoption. He's never filed an Answer to my Petition[] for Custody. My Petition for Custody is the only thing left standing. He can't Nonsuit my Petition for Custody. And the Statute says that this Court retains jurisdiction under the circumstances of the case.

Trial Court: That's the whole crux of it. Is that the Law or not?

As noted by us earlier in this opinion, the trial court, in ultimately dismissing this "cause," found that jurisdiction over the Child had passed to chancery court by virtue of the filing of Foster Mother's new adoption petition there. In support of its ruling, the court relied

upon Tenn. Code Ann. § 36-1-118 (2010), the statute governing the dismissal of adoption proceedings and guardianship orders. Subsection (e) of that statute provides as follows:

> (1) After the court's dismissal of the petition . . . , if the child had been in the legal custody or guardianship of [DCS] . . . prior to the . . . filing of the adoption petition, the court shall enter an order directing that the child shall be placed in the guardianship of [DCS]. . . .
>
> (2) In all other cases in which the child was not in the legal custody or guardianship of [DCS] . . . prior to the dismissal of the adoption proceeding by the court, . . . the child shall remain a ward of the court, which shall have jurisdiction to award the child's guardianship or legal custody according to the best interest of the child.
>
> (3) The court shall continue to have jurisdiction of the child to make such further orders as are necessary until another adoption petition is filed, at which time jurisdiction over the child shall transfer to the court where the new adoption petition may be filed; provided, the juvenile court shall retain jurisdiction of the child for allegations of delinquency, unruliness, and truancy pursuant to the provisions of title 37, chapter 1, part 1.

While acknowledging Tenn. Code Ann. § 36-1-118, Uncle insists that Tenn. Code Ann. § 36-1-116(f)(1) (2010), which governs the filing of adoption petitions, is dispositive. Subsection (f)(1) of Tenn. Code Ann. § 36-1-116 provides as follows:

> Upon the filing of the petition [for adoption], the court shall have exclusive jurisdiction of all matters pertaining to the child, . . . except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of

the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).

Uncle contends that, pursuant to Tenn. Code Ann. § 36-1-116, the trial court acquired full jurisdiction over "matters pertaining to the child," including Uncle's petition for custody, which jurisdiction was, according to him, unaffected by Foster Mother's voluntary nonsuit or the filing of her new petition in chancery court. We think Uncle's reliance on Section 36-1-116(f)(1), to the exclusion of Section 36-1-118, is misplaced. We conclude that the trial court properly dismissed the cause, in its entirety, for lack of jurisdiction. Our analysis follows.

C.

To begin, there is no dispute that the trial court acquired "exclusive jurisdiction of all matters pertaining to the child" upon the filing of Foster Mother's adoption petition. Tenn. Code Ann. § 36-1-116(f)(1). As part of the adoption case, the trial court was thereby granted authority to hear (1) Uncle's intervening challenge to the adoption and (2) his custody petition. In the present case, these matters were pending when Foster Mother abruptly nonsuited her adoption petition. At that point, Section 36-1-118(e) necessarily came into play. To reiterate, that section provides that, with respect to a child who is in the legal custody or guardianship of DCS prior to the filing of an adoption petition, upon dismissal of the petition, "the court shall enter an order directing that the child shall be placed in the guardianship of [DCS]. . . ." Tenn. Code Ann. § 36-1-118(e)(1). Additionally, the trial court retains jurisdiction "to make such further orders as are necessary *until another adoption petition is filed, at which time jurisdiction over the child shall transfer to the court where the new adoption petition may be filed*. . . ." Tenn. Code Ann. § 36-1-118(e)(3) (emphasis added). Here, the nonsuiting of Foster Mother's adoption petition and the filing of the new adoption petition occurred literally within minutes of each other. As a result, pursuant to the relevant statutory provision, jurisdiction of the cause was immediately transferred from the trial court to the chancery court, and the trial court's jurisdiction was at an end.

On the record presented, we reject Uncle's position that the trial court had jurisdiction of any "pending" action or claim after the adoption was dismissed and refiled in chancery court. The trial court did not err in dismissing the cause for lack of jurisdiction.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Louis F.B. This case is remanded to the trial court, pursuant to applicable law, for the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE